**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-81502-RLR

METRO WORLDWIDE, LLC,

        Plaintiff,

v.

ZYP, LLC,
ZYP TECHNOLOGIES, LLC,
ZYP FINANCIAL GROUP, LLC,
JOSEPH PORAT, and
TOMAR PORAT,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 35]

Plaintiff, Metro Worldwide, LLC ("Metro") alleges breach of contract (Count I), promissory estoppel (Count III), and deceptive and unfair trade practices (Count V) against ZYP, LLC, ZYP Financial Group, LLC ("ZYP Financial"), and ZYP Technologies, LLC ("ZYP Technologies") (collectively "the Corporate Defendants"). It alleges quantum meruit (Count II) and conversion (Count IV) against the Corporate Defendants and also against Joseph Porat and Tomar Porat (collectively "the Individual Defendants"). All Defendants now move for summary judgment on all counts.[1]

This matter was referred to me by the Honorable Robin L. Rosenberg. ECF

---

[1] Defendants filed a Counterclaim, but have not moved for summary judgment on that claim.

No. 74.  I have reviewed the relevant pleadings, including the respective statements of material facts, and am otherwise fully advised in the record.  This matter is ripe for decision.  Defendants' Motion should be **GRANTED IN PART and DENIED IN PART**.

## SUMMARY JUDGMENT

Summary judgment is authorized only when the moving party establishes that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).  When evaluating a summary judgment motion, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Adickes*, 398 U.S. at 157.

The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must initially "present[] evidence which, if uncontradicted, would entitle it to a directed verdict at trial."  *Walker v. Darby,* 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  Then, "Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Id.*

The method by which the moving party can meet its initial burden depends on whether the movant or the non-movant would bear the burden of proof at trial on the

underlying legal issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). In contrast, where, as here, the movant does not bear the burden of proof at trial, it "'is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.'" *Nunez v. Coloplast Corp.*, No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020) (J. Singhal) (citations omitted). Instead, it merely must point out "an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels,* 941 F.2d at 1437-38.

If the moving party meets its initial burden, the non-moving party "may not rest upon the mere allegations or denials in its pleadings." *Walker,* 911 F.2d at 1576. Rather, it must "make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Those Certain Underwriters at Lloyd's Subscribing to Policy No. 25693 JB v.*

*Capri of Palm Beach, Inc.*, 932 F. Supp. 1444, 1446 (S.D. Fla. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)) (J. Moreno), *aff'd sub nom*. *Certain Underwriters v. Capri*, 128 F.3d 732 (11th Cir. 1997).

An issue is genuine if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. A self-serving and uncorroborated affidavit can create a genuine dispute of material fact (*United States v. Stein,* 881 F.3d 853, 858 (11th Cir. 2018)); but, "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo,* 903 F.3d 1207, 1213 (11th Cir. 2018).

"If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

In sum, Defendants must first offer facts, viewed in the light most favorable to Metro, (or note the absence of facts) sufficient to show that they would be entitled to judgment as a matter of law. If they do, Metro bears the burden of producing

4

additional undisputed evidence that shows either (1) Defendants are not entitled to judgment at this stage or (2) there is a disputed issue of material fact.

Federal Rule of Civil Procedure 56 and Local Rule 56.1 set forth the procedures for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c) states:

> **Supporting Factual Positions.** A party asserting that a fact . . . is genuinely disputed must support the assertion by:
> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . admissions, interrogatory answers, or other materials . . .
> **Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Fed. R. Civ. P. 56(c). The Court has discretion to disregard a factual assertion or dispute that is not properly supported by admissible evidence. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(c), (d).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)    give an opportunity to properly support or address the fact;

(2)    consider the fact undisputed for the purposes of the motion;

(3)    grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4)    issue any other appropriate order.

Fed. R. Civ. P. 56(e).

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)     defer considering the motion or deny it;

(2)     allow time to obtain affidavits or declarations or to take discovery; or

(2)     issue any other appropriate order.

Fed. R. Civ. P. 56(d).  A factual assertion that is not properly disputed may be deemed admitted "provided that: (i) the Court finds that the material fact is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c).

## **PRELIMINARY ISSUES**

I must address two preliminary issues before turning to the merits of the Motion.

1. Lack of Discovery

In its Response, Plaintiff repeatedly points to a lack of discovery as a basis to deny the pending motion or defer a ruling on the motion.  For example, Plaintiff states, "At this time, Plaintiff has not had the benefit of deposing Defendant nor receiving Defendants' complete document production.  Indeed, to allow summary judgment to proceed without allowing Plaintiff the opportunity to depose Defendants would significantly prejudice Plaintiff."  ECF No. 46 at 2; *id.* at 5 ("Discovery remains ongoing in this matter.").  Plaintiff also argues, "Next, Defendants argue that the Court should grant summary judgment because Plaintiff has failed to make allegations against each specific entity.  On the facts developed to date, there is a complicated, interrelated relationship between Defendants' various entities. Without the benefit of Defendants' depositions and final document production, Plaintiff is still

developing the role each specific entity played during the parties' negotiation." *Id.* at 9 (record citation omitted). Later, Plaintiff argues, "Under the circumstances presented here, it would be unjust to allow ZYP to deprive Metro of monies that rightfully belong to Metro especially without the benefit of the Defendants' depositions and Defendants' delayed final document production." *Id.* at 14. They further state, "Curiously, Defendants do not deny that they received Metro's property or that Defendants owe Metro over $500,000. On that admission alone, Plaintiff should be allowed to depose Defendants before the Court rules on Defendants' motion." *Id.* at 17. Also, "Defendants have chosen to ignore the parties' document production and lack of depositions. Because discovery is ongoing and the parties do not have an adequate record, summary judgment is inappropriate at this juncture." *Id.* at 20.

This Court has already rejected Plaintiff's argument that they should have additional discovery before a ruling on the Motion. To recap, Plaintiff filed its Complaint on November 5, 2019. On February 21, 2020, Judge Rosenberg entered a Scheduling Order which ordered "**discovery shall begin immediately.**" ECF No. 20 at 1 (emphasis in original). It further ordered that all discovery "shall be completed" by July 9, 2020, and that all pretrial motions, including motions for summary judgment "shall be filed" by August 10, 2020. *Id.* at 2. Plaintiff did not propound Requests for Admission, Interrogatories, or Requests for Production for 60 more days, until on or about April 30, 2020. ECF No. 44 at 2. Defendants timely filed their Motion for Summary Judgment on August 10. ECF No. 35. Plaintiff

responded on August 28.  ECF No. 46.  One day before filing its Response, and more than a month after the discovery deadline, Plaintiff filed a Motion to Compel Discovery.  ECF No. 44.  This motion was denied.  ECF No. 45.  On September 2, the parties filed an Agreed Motion to Amend the Scheduling Order to extend fact discovery until December 9, 2020, and to extend the dispositive motion deadline until January 10, 2021.  ECF No. 49.  The Court denied the motion to amend the Scheduling Order.  ECF Nos. 54, 58.

It is well-established in the Eleventh Circuit that district courts are "not required to await the completion of discovery before ruling on a motion for summary judgment." *Burns v. Town of Palm Beach*, 343 F. Supp. 3d 1258, 1261 (S.D. Fla. 2018) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) (further citing *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843-44 (11th Cir. 1989)). If a party needs further discovery to respond to a motion for summary judgment, Rule 56(d) directs that party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). If the party makes this showing, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order." *Id.*  Plaintiff did not file an affidavit or declaration pursuant to Rule 56(d); rather, it filed a substantive response to the Motion. Therefore, Plaintiff waived any objection to the Court ruling on the Motion based on a lack of sufficient discovery. *Burns*, 343 F. Supp. 3d at 1261-62 (citing *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F. 2d 828, 833 (10th Cir.

1986) and *Villa v. Bd. of Cty. Com. of the Cty. of Arapahoe*, 934 F. 2d 900, 1991 WL 70714 at \*4 (10th Cir. 1991)).

   2.   Subject Matter Jurisdiction

   Defendants argue that the absence of a valid contract deprives this Court of subject matter jurisdiction over the breach of contract because there is no case or controversy under Article III of the Constitution.  ECF No. 35 at 7-8.  Plaintiff does not address this argument in its Response.   Nevertheless, the Court has an independent duty to confirm its own subject matter jurisdiction. *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).  Any question concerning subject matter jurisdiction must be resolved before addressing the merits. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020).

   Defendants rely on cases arising at the Motion to Dismiss and class certification phases that held a plaintiff had not properly alleged a valid contract, and therefore lacked Article III standing.   Here, the Court has already found that the Complaint *plausibly alleges* a valid contract between Plaintiffs and the Corporate Defendants.   ECF No. 22 (Paperless order denying motion to dismiss).   That allegation is sufficient to establish Article III subject matter jurisdiction.

### UNDISPUTED FACTS

   1.   The Corporate Defendants are separately incorporated LLCs. Defendants' Statement of Undisputed Material Facts, ECF No. 39 (hereinafter "DSOF") ¶ 17.[2]

---

[2] The DSOF asserts that "ZYP, ZYP Technologies and ZYP Financial are separate entities."  ECF No. 39 ¶17.  It cites Florida Division of Corporation records (ECF No. 36 at 4-7) as well as undisputed

2.      "ZYP, LLC (and/or one of the ZYP entities)" sought to purchase Plaintiff Metro Worldwide, LLC's ("Metro") bus upfitting business.   Plaintiff's Additional Facts, ECF No. 47 (hereinafter "PAF") ¶18.[3]

3.      In furtherance of the possible transaction, a Letter of Intent was executed on or about August 28, 2017, between "ZYP, LLC or affiliate" and Metro. (the "LOI"). DSOF ¶1; ECF No. 1-1 at 5.

4.      Paragraph 11 of the LOI provides:

"With the submission of the executed LOI, the Buyer will deposit Fifty Thousand Dollars ($50,000.00) (the "Deposit") in escrow with the Seller's Attorney's Trust Account. Seller's Attorney will prepare an escrow agreement that will provide for a return of the deposit to the Buyer if the transaction does not close by October 31, 2017."

DSOF ¶4.

5.      Paragraph 16 of the LOI provides:

"The Seller understands that this letter of intent is solely an indication of interest and does not in any way constitute an offer or commitment on the Buyer's part of any kind."

---

portions of the Complaint.  *See* ECF No. 1 ¶¶ 2-4; ECF No. 25 ¶¶2-4. Plaintiff disputes the assertion in the DSOF.  ECF No. 47 ¶ 17.  It cites (1) the signature page of the Letter of Intent, which references "ZYP, LLC or affiliate" above Mr. Porat's signature, ECF No. 1-1 at 5, (2) the Asset Purchase Agreement, which references "ZYP TECHNOLOGIES, LLC, a Florida limited liability corporation or its permitted assignee," ECF No. 1-3 at 2, and (3) Defendants' Responses to Plaintiff's First Request for Admission, which admits "that ZYP Financial deposited the $50,000 provided for in the Letter of Intent <u>after</u> August 31, 2017."  ECF No. 47-1 at 5 (emphasis in original).  None of the material Plaintiff cites creates a genuine issue of fact as to whether ZYP, LLC, ZYP Technologies, and ZYP Financial are separately incorporated legal entities.

[3] Where necessary to accurately and precisely reflect Metro's factual assertions, quoted language is taken verbatim from the PAF.  Here, Metro's Additional Facts refer to "ZYP" but do not define which legal entity it is.  At different times, the parties have used the stand-alone term "ZYP" to refer to different entities.  Compare DSOF at 1 (defining ZYP, LLC as "ZYP") with Complaint, ECF No. 1, at 1 (defining ZYP, LLC as "ZYP" but also defining ZYP, LLC, ZYP Technologies, LLC, and ZYP Financial Group, LLC, collectively as "ZYP") with Metro Response to Motion for Summary Judgment, ECF No. 47 at 1 (defining "ZYP, LLC, ZYP Technologies, LLC, ZYP Financial Group, LLC, (collectively, 'ZYP')").

DSOF ¶7.

6.    Paragraph 17 of the LOI provides:

"This Letter of Intent expires August 31st, 2017 at 5:00 pm CDT."

DSOF ¶8.

7.    Paragraph 18 of the LOI provides:

"Except as provided in paragraphs 13, 14 and 15, the parties recognize that this letter sets forth their intentions only and does not create binding legal obligations. Such obligations will be created when the purchase and other definitive agreements are signed which agreements shall contains representations, warranties, indemnities and holdbacks customary for a transaction of this type and amount."

DSOF ¶9.

8.    Joseph Pritchard signed the LOI on behalf of Metro. DSOF ¶2.

9.    Joseph Pritchard read and understood the LOI prior to signing it.

DSOF ¶3.

10.    Defendant Tomer Porat is an individual and a principal in the Corporate Defendants.  DSOF ¶12.

11.    Defendant Joseph Porat is an individual and a principal in the Corporate Defendants.  DSOF ¶13.

12.    Tomer Porat signed the Letter of Intent on behalf of "ZYP, LLC or affiliate." PAF ¶19; ECF No. 1-1 at 5.

13.    ZYP Financial deposited the $50,000.00 provided for in the Letter of Intent after the Letter of Intent had expired. DSOF ¶5, PAF ¶21

14.    Neither ZYP, LLC nor ZYP Technologies deposited an escrow payment. PAF ¶22

15.     The $50,000.00 deposit required by the LOI and paid by ZYP Financial, is still and currently being held by the escrow agent. DSOF ¶6.

16.     The Letter of Intent expired by its own terms on August 31, 2017. PAF ¶20.[4]

17.     Thereafter, "ZYP, LLC (and/or of the ZYP entities)" and Metro Worldwide, LLC extended the escrow agreement four times. PAF ¶28.[5]

18.     On or about February 21, 2018, a draft Asset Purchase Agreement (the "APA") was created. DSOF ¶10; ECF No. 1-3 at 2.  The first paragraph of the APA states:

> This Asset Purchase Agreement (this "*Agreement*"), dated as of March 1, 2018 (the "*Effective Date*"), is entered into between METRO WORLDWIDE, L.L.C., an Iowa limited liability company ("*Seller*") and ZYP TECHNOLOGIES, LLC, a Florida limited liability company or its permitted assignee ("*Buyer*").  Buyer and Seller are referred to herein individually as a "*Party*" and collectively as the "*Parties*".

ECF No. 1-3 at 2.

---

[4] Paragraph 20 of the PAF asserts, "The Letter of Intent expired by its own terms on August 31, 2017. Notwithstanding the expiration of the Letter of Intent, Metro and ZYP continued to perform consistent with their agreement."  Defendants respond, "Undisputed that the Letter of Intent expired by its own terms on August 31, 2017."  Disputed that "Metro and ZYP continued to perform consistent with their agreement."  ECF No. 56 ¶ 20. (citing Tomar Porat Affidavit, ECF No. 56-1 ¶¶10-19).  In support of the assertion that "Metro and ZYP continued to perform consistent with their agreement," Metro cites the affidavit of Angela Pritchard, ECF No. 46-1 ¶ 6, which merely restates this assertion with no further evidence cited.  The statement in Ms. Pritchard's affidavit (and in the PAF) is too conclusory and vague to create a genuine dispute of fact. *See Brown v. Publix Super Markets, Inc.,* 626 F. App'x 793, 797 (11th Cir. 2015) ("speculation, unsupported by evidence, cannot defeat summary judgment").

[5] The PAF states that these events occurred, "During this time," but does not identify the specific time period.

19.     The signature block of the APA lists "ZYP TECHNOLOGIES, LLC" as the buyer and "Metro Worldwide, L.L.C." as the seller.  *Id.* at 18.

20.     Thereafter, "ZYP, LLC, (and/or one of the ZYP entities)" and Metro exchanged multiple drafts of the APA. PAF ¶27

21.     The APA was never executed by Metro and ZYP Technologies.  There is no fully executed Asset Purchase Agreement between Metro and any Defendant. DSOF ¶11.[6]

22.     "ZYP, LLC (and/or one of the ZYP entities)" and Metro jointly developed the Metro Worldwide Business Transition Schedule.  PAF ¶23.[7]

23.     The Metro Worldwide Business Transition Schedule ("Business Transition Schedule") references:

    a.     "ZYP to fund FR and arrange transportation of duplicated tooling, jigs & fixtures to MO."[8]

---

[6] Plaintiff states, "Undisputed that the Asset Purchase Agreement is unexecuted, but ZYP accepted and agreed to be bound by its terms as established by ZYP's conduct in furtherance of the agreement and by accepting benefits under the agreement, as explained below."  ECF No. 47 ¶11.  Plaintiff does not cite to any record evidence in support of this statement.  Regardless, even if supported by record evidence, it would not create a genuine factual dispute with the assertion in DSOF 11.

[7] Plaintiff states that this fact is disputed, citing Tomar Porat's affidavit, ECF No. 56-1, at ¶¶ 14-19. The cited portions of Mr. Porat's affidavit do not directly deny that a ZYP entity participated in creating the Business Transition Schedule.  Also, Paragraph 29 of the Complaint alleges, "For example, the Parties jointly developed the Metro Worldwide Business Transition Schedule . . . and it was frequently discussed and relied upon at periodic joint meetings."  In their Answer, Defendants state, "Admitted that a Metro Worldwide Business Transition Schedule was developed but denied that it was frequently discussed and relied upon."  ECF No. 25 ¶ 29.  The evidence cited in support of PAF paragraph 23 does not specify the relevant dates when this Schedule was developed.  *See* ECF No. 1-2.  Therefore, when viewed in the light most favorable to Metro, the evidence shows that one or more of the Corporate Defendants developed the Business Transition Schedule with Metro at an unspecified date.

[8] It appears that "FR" refers to FR Conversions, which manufactured buses for Metro.  *See* Tomar Porat affidavit, ECF No. 56-1 ¶13.

b. "Transfer Ford Bus Pool from FR to ZYP, LLC."

c. "Transfer Ford bus chassis pool from FR Conversions to ZYP, LLC in Sringfiled [sic], MO location."

d. "Bus manufacturing training by FR production team to the ZYP team in MO."

e. "Side by side Bus manufacturing at FR and ZYP MO."

f. "Bus production at both FR in MD and by ZYP if [sic] Springfield, MO."

g. "100% of manufacturing at ZYP in MO. By 12/15."

h. "100% of all bus production at ZYP faciliteis [sic] in Springfield, MO. By December 15, 2017."

i. "ZYP, LLC to have fully executed and funded the purchase of Metro Worldwide by 12/15/17."

*See* ECF No. 1-2 at 2.

24.     Limo Land, Inc. ("Limo Land") is a Missouri corporation incorporated on or about March 28, 2012.  ECF No. 55 at 7.[9]

25.     Between September 2017 and February 2018, Metro transferred physical assets to Limo Land, which then began manufacturing buses at a facility in Springfield, Missouri.  PAF ¶¶ 24, 25.[10]

---

[9] Defendants requested that the Court take judicial notice of the Missouri incorporation paperwork for Limo Land, Inc.  ECF No. 55.  A copy was served on Metro, who did not object.  I will grant the request for judicial notice.  I find that Limo Land Inc.'s corporate creation and status can be "accurately and readily determined" from the Missouri records, which are a source "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

[10] Defendants do not dispute that these assets were transferred to Limo Land or that Limo Land used the assets to manufacture buses in Springfield, Missouri.  As discussed more fully below, Defendants dispute that they are responsible for, or benefited from this asset transfer.

26.    "ZYP (specifically Tomar Porat)" made repeated assurances to Metro that it would execute the APA.  PAF ¶15.[11]

## DISCUSSION

    1. **Counts I-III**

The primary conceptual dispute on Counts I-III appears to be whether Metro sent its assets to Limo Land in furtherance of an agreement with one or more of the Defendants, or whether the transaction between Limo Land and Metro was separate from Metro's negotiations with Defendants.  *See, e.g.,* Tomar Porat Affidavit, ECF No. 56-1 ¶¶13-19.

The relationship between the Individual Defendants and Limo Land, Inc. is disputed.  Metro asserts, "Limo Land is owned and operated by Individual Defendant Tom[a]r Porat and/or Individual Defendant Joseph Porat."  PAF ¶26 (citing and restating Paragraph 12 of the affidavit of Angela Pritchard, ECF No. 46-1 ¶12).  In response, Defendants submitted an affidavit from Tomar Porat which swears that he and Joseph Porat are "merely investors (non-owner investors) in Limo Land."  ECF No. 56-1 ¶ 7, cited in ECF No. 56 ¶26.  This factual dispute is not material to the issues before the Court.  Even assuming that the Individual Defendants own and operate Limo Land, the evidence in the record viewed in the light most favorable to Metro does not negate that Limo Land is a separate corporate entity from the Corporate Defendants.  Conversely, even assuming the Individual Defendants are

---

[11] Defendants state that this fact is disputed, citing to Mr. Porat's affidavit.  *See* ECF No. 56 ¶ 29, citing ECF No. 56-1 ¶¶ 9-13, 15-16.  The cited portions of Mr. Porat's affidavit do not directly deny the assertion that he gave repeated assurances to Metro about executing the Asset Purchase Agreement.

passive investors in Limo Land, for the reasons discussed below, a reasonable jury could conclude that Metro transferred its assets to Limo Land, Inc. at the direction of, and for the benefit of, ZYP, LLC.

To summarize, viewed in the light most favorable to Metro, the undisputed facts show that: (1) there were negotiations between Metro and one or more of the Defendants, acting through the Individual Defendants, for the sale of Metro's assets, (2) the negotiations produced a non-binding letter of intent between Metro and "ZYP, LLC or affiliate," (3) ZYP Technologies deposited escrow funds after the deadline in the letter of intent, (4) the escrow agreement has been extended four times by Metro and "ZYP, LLC (and/or one of the ZYP entities)," (4) escrow funds are still on deposit, (5) the APA was prepared, which listed "ZYP TECHNOLOGIES, LLC" or its assignee as the buyer of Metro's assets, (6) a Business Transition Schedule was jointly created, which lists specific steps in furtherance of consummating the asset sale, (7) consistent with the Business Transition Schedule, Metro transferred assets to Limo Land, Inc, in Springfield, Missouri, (8) Tomar Porat repeatedly assured Metro that the APA would be executed, (9) no Defendant executed the APA, and (10) the Defendants have not compensated Metro for its assets.

### a. Breach of Contract

Count I alleges breach of an oral contract against the Corporate Defendants. To succeed on a breach of contract claim, a plaintiff must prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *De La Flor v. Ritz-Carlton Hotel Co., L.L.C.*, No. 12-23689, 2013 WL 1874618, at *4 (S.D. Fla. 2013) (J. Huck) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256,

1272 (11th Cir. 2009). "Oral contracts are just as valid as written contracts." *Florida Standard Jury Instructions (Contract and Business Cases)* § 416.5. "[W]hether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (citing *Acumen Constr. Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. Dist. Ct. App. 1993)).

An oral contract is subject to the basic requirements of contract law such as offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla. 2004). "To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc.,* 728 So.2d 297 (Fla. Dist. Ct. App. 1999). "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis. *Lanza v. Damian Carpentry, Inc.*, 6 So. 3d 674, 676 (Fla. Dist. Ct. App. 2009).

Defendants first challenge whether a valid oral contract existed. They argue:

> Plaintiff fails to provide the essential terms of the unenforceable contract such as price, term, or duration, warranties, holdbacks, representations and how Defendants breached each of those terms such that they would be entitled to damages, including what "assets" were transferred. Shockingly, Plaintiff fails to allege who, exactly, were the parties to the contract. Plaintiff, rather, names three entities in its Complaint, aggregates them all as "ZYP" and then, in conclusory fashion, alleges in non-specific terms that "ZYP" acted or failed in a manner that resulted in damages to Plaintiff.

ECF No. 35 at 6-7. Regarding the identity of the purchasing party, Defendants argue

that Metro has not adequately proven which (if any) of the Defendants was a party to the alleged contract, nor has Metro established any legal basis to disregard the separate corporate forms of the Corporate Defendants.  *Id.* at 7.  Defendants further note that neither the LOI nor the Asset Purchase Agreement were signed, and that the LOI specifically disclaimed that a contract was being created.  *Id.*

Metro alleges that the parties' course of conduct, including conduct that post-dated the expiration date on the LOI, evinced an intent to form a contract that was consistent with the terms of the Asset Purchase Agreement and the Business Transfer Schedule.[12]  This course of conduct included extending the escrow agreement multiple times, giving assurances that the Asset Purchase Agreement would be signed, and physically transferring assets to the Limo Land facility in Missouri.  *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) ("contracts implied in fact are where a person performs services at another's request . . . fairly raising the presumption that the parties understood and intended that compensation was to be paid") (citation omitted).

Viewed in the light most favorable to Metro, there was an agreement on the following material and essential contract terms: price ($1.2 million), the items being purchased (all of the assets of Metro), and a timeframe for performance (the APA calls

---

[12] Metro asserts, "Notwithstanding the expiration of the Letter of Intent, Metro and ZYP continued to perform consistent with their agreement." PAF ¶20 (citing and restating Paragraph 6 of affidavit of Angela Pritchard, ECF No. 46-1).  Defendants dispute this assertion, citing the affidavit of Tomar Porat. ECF No. 56 ¶20, citing ECF No. 56-1 ¶¶ 10-19.  Regardless, the assertion is too conclusory to create a genuine dispute of fact.

for a series of payments ending on June 30, 2018).  The sole remaining essential term is the identity of the purchaser.  Although it is a close question, viewing the evidence in the light most favorable to Metro, a reasonable jury could conclude that ZYP, LLC was the party that contracted to purchase Metro's assets, particularly given the specific references to ZYP, LLC in the Business Transition Schedule.

Not so for the remaining Corporate Defendants.  The facts are too speculative for a reasonable jury to conclude that ZYP Technologies or ZYP Financial were parties to an asset purchase contract.  The APA lists the buyer as ZYP Technologies or its assignee.  There is no evidence of an assignment, and no other evidence of ZYP Technologies interacting with Metro.  Similarly, other than posting the escrow money, ZYP Financial is absent from the undisputed facts.  The Business Transition Schedule talks only about "ZYP, LLC" and "ZYP."  Drafts of the APA were exchanged between Metro and "ZYP, LLC (and/or one of the ZYP entities)."  Even viewed in the light most favorable to Metro, these facts are insufficient to meet Metro's burden of proving that either ZYP Technologies or ZYP Financial entered into an oral contract to purchase Metro's assets.

Defendants also challenge Metro's entitlement to the remedy of specific performance, even assuming a valid contract existed.  Count I of the Complaint alleges, "ZYP has now refused to pay Metro the purchase price ($1.2MM) under the Asset Purchase Agreement, and other amounts (over $500,000) owed . . . Accordingly, Plaintiff is entitled to specific performance under the Asset Purchase Agreement and all other amounts due and owing together with other applicable relief."  ECF No. 1

¶¶ 43, 45. Metro argues that the oral contract incorporated a specific performance provision from the APA. Metro has not cited evidence in the record from which a reasonable jury could find that this term was incorporated into the parties' oral contract. Therefore, specific performance is not a remedy available to Metro, here. Nevertheless, Metro can pursue monetary damages for the alleged breach of the oral contract. *See* Fed. R. Civ. P. 54(c) ("[A non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Summary judgment should be granted for ZYP Technologies, and ZYP Financial on Count I. Summary judgment should be denied for ZYP, LLC.

### b. Quantum Meruit

Count II alleges a claim for quantum meruit against all Defendants.

> Quantum meruit is a "legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services ... where ... a reasonable person receiving such benefit would ordinarily expect to pay for it." *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.,* 728 So. 2d 297, 305 (Fla. Dist. Ct. App. 1999) (quoting *Osteen v. Morris,* 481 So. 2d 1287, 1289–90 (Fla. Dist. Ct. App. 1986)).

*Daake v. Decks N Such Marine, Inc.,* 201 So. 3d 179, 180–81 (Fla. Dist. Ct. App. 2016). Quantum meruit is a cause of action in quasi-contract, also called a contract implied in law. *See generally, Commerce P'ship 8098 Ltd.,* 695 So. 2d at 386 (discussing distinction between contract implied in fact and contract implied in law). To sustain this claim, Metro must prove: (1) it gave a benefit to a particular defendant, (2) defendant knew of the benefit, (3) defendant accepted or retained the benefit, and (4) the circumstances are such that the defendant should, in all fairness, be required to

pay for the benefit.  Florida Standard Jury Instructions (Contract & Business Jury Instructions) §416.7.

The Individual Defendants argue that they are entitled to summary judgment because the undisputed facts show that they, at all times, were acting in their capacity as members of an LLC, and not in their individual capacities.  I agree.  The sole evidence relating to the Individual Defendants is (1) they were principals in the Defendant entities, (2) Tomar Porat signed the LOI on behalf of "ZYP, LLC or affiliate," (3) they are non-owner investors in Limo Land,  ECF No. 56-1 ¶ 7, and (4) they participated in negotiations with Metro on behalf of the corporate defendants.  *See, e.g., id.* ¶¶ 10, 11; ECF No. 46-1 at 6-9.   Even when viewed in the light most favorable to Metro, these facts fail to show that the Individual Defendants, in their individual capacities, received any goods or services from Metro.  As such, they are entitled to judgment as a matter of law on Count II. [13]

The Corporate Defendants argue that there is insufficient evidence that Metro conferred a benefit on each of them, and that "Plaintiff never specifically alleges how 'the gradual transfer of goods . . . and know-how' occurred or which entity these benefits were conferred upon."  ECF No. 35 at 13.  The facts allegedly supporting a finding that the Corporate Defendants received a benefit from Metro comes from Plaintiff's Additional Facts, ECF No. 47 ¶¶ 24-26, and from the Business Transfer Schedule.  ECF No. 1-2.  Plaintiff's Additional Facts allege in pertinent part:

---

[13] In its Response, Metro argues that the Individual Defendants are the sole owners of the corporate defendants and "an individual who personally participates in intentional tortious conduct is liable for that conduct regardless of the corporate form."  ECF No. 46 at 16.  This argument fails because a claim for quantum meruit is a cause of action in quasi-contract, not a tort.

24.     Beginning in September 2017, ZYP accepted Metro's business assets, including materials, bus chassis, and other parts from Metro that ZYP never paid for.

25.     In February 2018, ZYP began manufacturing buses at its Limo Land facility in Springfield, Missouri using parts, equipment, personnel, and know-how obtained from Metro. ZYP has gained significant profits as a result of Metro's efforts, which profits are due to Metro.

26.     Limo Land is owned and operated by Individual Defendant Tom[a]r Porat and/or Individual Defendant Joseph Porat.

In support of Paragraph 24, Metro cites the Business Transition Schedule (ECF No. 1-2) and paragraph 10 of Angela Pritchard's affidavit, which states, "Beginning in September 2017, ZYP accepted Metro's business assets, including materials, bus chassis, and other parts from Metro that ZYP never paid for."  ECF No. 46-1 ¶10. Paragraph 25 of the PAF relies on paragraph 11 of Ms. Pritchard's affidavit, which states, "In February 2018, ZYP began manufacturing buses at its Limo Land facility in Springfield, Missouri using parts, equipment, personnel, and know-how obtained from Metro.  ZYP gained significant profits as a result of Metro's efforts, which profits are due to Metro."

Paragraph 26 of the PAF relies on paragraph 12 of Ms. Pritchard's affidavit, which summarily states, "Limo Land is owned and operated by Individual Defendant Tom[a]r Porat and/or Individual Defendant Joseph Porat."  The affidavit does not explain how Ms. Pritchard knows this fact, but does swear, "The statements made

herein are based on my personal knowledge and if called as a witness I could, and would, testify competently to these facts." ECF No. 46-1 ¶ 2.  The Business Transition Agreement specifically references ZYP, LLC.  It also refers to ZYP, LLC having a facility in Springfield, Missouri.

Defendants dispute each of these factual assertions.  ECF No. 56 ¶¶ 24-26.  In response to Paragraphs 24 and 25, they cite Paragraph 14-19 of Tomar Porat's affidavit.  ECF No. 56 ¶¶ 24, 25.  In response to Paragraph 26, they cite Missouri corporation records and Paragraphs 7 and 8 of Mr. Porat's affidavit.  *Id.* ¶26.

As an essential element of its quantum meruit claim, Metro bears the burden of proving at trial that a particular defendant knowingly received the benefit of the assets that Metro transferred to Limo Land.  Viewed in the light most favorable to Metro, there is a genuine issue of fact regarding the relationship between ZYP, LLC and Limo Land.  Additionally, particularly given the Business Transition Schedule, there is a genuine dispute of fact whether Metro's assets were sent to Limo Land at the direction of, and for the benefit of, ZYP, LLC.

In contrast, Metro has failed to identify sufficient facts from which a reasonable jury could rule in its favor on this issue with regard to ZYP Technologies and ZYP Financial.  First, the relevant paragraphs of Ms. Pritchard's affidavit refer only to "ZYP."  They do not differentiate among ZYP, LLC, ZYP Technologies, LLC, or ZYP Financial, LLC.  Second, it is undisputed that each of the Corporate Defendants is a separate legal entity, as is Limo Land, Inc.  The evidence proffered by Metro (both disputed and undisputed) does not support a finding that the

corporate form of these entities should be disregarded or that the actions of one should be imputed to any of the others.  Third, neither of those entities is mentioned by name in the Business Transition Schedule Agreement.  At best, it refers to "ZYP" without differentiating among the entities.  In sum, Metro has not identified sufficient evidence from which a reasonable jury could conclude that Limo Land, Inc.'s receipt of assets from Metro should be imputed to ZYP Technologies or ZYP Financial.

Summary judgment should be granted for ZYP Technologies and ZYP Financial on Count II.  Summary judgment should be denied for ZYP, LLC.

### c.  *Promissory Estoppel*

Count III asserts a claim for promissory estoppel against the Corporate Defendants related to the February 21, 2018, APA.

> "Generally, promissory estoppel is the principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor reasonably should have expected the promisee to rely on the promise and if the promisee did actually rely on the promise to her detriment."   The promisor is only bound by reliance that she does or should foresee. Factors to consider in this determination include the reasonableness of the promisee's reliance and the definite and substantial character of the promise. Promissory estoppel does not apply if the terms of the promise are indefinite.

*Winnie v. Infectious Disease Associates, P.A.,* 750 Fed. Appx. 954, 963–64 (11th Cir. 2018) (internal citations omitted).

The elements of promissory estoppel are: (1) a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and (2) which does induce such action or forbearance is binding if

(3) injustice can be avoided only by enforcement of the promise. *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 93 (Fla. 2013) (citing *W.R. Grace and Co. v. Geodata Serv., Inc.,* 547 So.2d 919, 924 (Fla. 1989)); *see also* Florida Standard Jury Instructions (Contract & Business Jury Instructions) §416.46.   The underlying promise must be definite and the reliance on that promise must be reasonable. *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. Dist. Ct. App. 2006)), *cited in GVB MD, LLC v. United Healthcare Ins. Co.,* 19-20727-CIV, 2019 WL 3409183, at *8 (S.D. Fla. May 9, 2019) (J. Torres), *report and recommendation adopted,* 19-CV-20727-CIV, 2019 WL 3408925 (S.D. Fla. May 28, 2019).   Finally, under Florida law, promissory estoppel must be proven by clear and convincing evidence. *E.g. Escarra v. Regions Bank,* 353 Fed. Appx. 401, 403 (11th Cir. 2009).  "Clear and convincing evidence" is evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable'." *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984); *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 599 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009) (J. Ryskamp), *aff'd in part, vacated in part*, 589 F.3d 1233 (Fed. Cir. 2009) (citations omitted); *Powell v. Home Depot U.S.A.,* 2009 WL 1515073 at *8 (S.D. Fla. June 1, 2009) (J. Hurley).  Therefore, I must apply the clear and convincing evidence standard at the summary judgment phase.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").

The relevant undisputed facts, viewed in the light most favorable to Metro, are:

- A Business Transition Schedule was developed that contemplated transferring Metro's assets to a ZYP, LLC, facility in Springfield, Missouri

- Limo Land operates a facility in Springfield, Missouri.

- A series of draft APAs were exchanged, which contained a $1.2 million purchase price.

- Tomar Porat, one of the owner/operators of ZYP, LLC, made repeated assurances to Metro that the APA would be executed.

- Beginning in September 2017, Metro's business assets were transferred to Limo Land at its Missouri location.

- Metro has not been paid for its assets.

From these facts, a reasonable jury could infer by clear and convincing evidence that ZYP, LLC, promised to buy Metro's assets for $1.2 million with the understanding that Metro would transfer those assets to Limo Land, and Metro reasonably relied on those promises to its detriment. For the same reasons stated above, there are insufficient facts for a reasonable jury to conclude by clear and convincing evidence that the relevant promises were made by ZYP Financial or ZYP Technologies.

Summary judgment should be granted for ZYP Technologies, and ZYP Financial on Count III. Summary judgment should be denied for ZYP, LLC.

### 2. *Conversion*

Count IV alleges conversion against all Defendants. Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his

ownership therein." *Warshall v. Price,* 629 So. 2d 903, 904 (Fla. Dist. Ct. App. 1993) (citing 12 Fla. Jur. 2d *Conversion and Replevin* § 1 (1979)).  "Thus, to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. Dist. Ct. App. 2011). "In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so.  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003), *aff'd,* 419 F.3d 1208 (11th Cir. 2005).  In order for there to be a conversion where there is a contractual relationship between the parties, the conversion "must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (*citing Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 495 (Fla. Dist. Ct. App. 1994)).

Count IV alleges a claim for conversion of money.  It states in relevant part:

58.    In addition to owing Metro the $1.2MM purchase price pursuant to the Asset Purchase Agreement, ZYP and/or the Individual Defendants owe Metro amounts in excess of $500,000.00 for:

(a) operating expenses,

(b) parts sold to ZYP by Metro,

(c) profits retained by ZYP due and payable to Metro on the sale of completed buses,

27

(d) chassis and parts transfers,

(e) payment by Metro of customer warranty claims on buses built by ZYP, and

(f) other related expenses.

59.    ZYP and/or the Individual Defendants have deprived Metro of the monies owed to it and they have retained those monies and other assets inconsistent with Metro's ownership interest in the monies and assets.

60.    As a result of ZYP's and/or the Individual Defendant's conduct, Metro has been and continues to sustain damages.

ECF No. 1 ¶¶ 58-60.  Although Count IV references that Defendants have retained "other assets," the prayer for relief does not ask for the return of any specific non-monetary property.  *Id.* at 11 (requesting monetary damages in excess of $1.75 million, specific performance, attorneys' fees and costs, and "such further relief as the Court may deem just and proper.").

The undisputed material facts, even when viewed in the light most favorable to Metro, fail to identify specific funds that are currently in the possession of any of the Defendants and that are the property of Metro.  Plaintiffs bear the burden of proof on this issue at trial.  They have failed to establish either a genuine factual dispute or entitlement to relief based on the undisputed facts.  Summary judgment should be entered for all Defendants on Count IV.

Independently, the Individual Defendants are entitled to summary judgment on Count IV because the undisputed facts fail to show that the Individual Defendants took any actions outside of their roles as members of the Defendant entities, or that they, as individuals, took possession of Metro's property.  As such, Metro cannot show

that the Individual Defendants are liable for conversion.

      3. ***FDUTPA***

Count V alleges a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §501.201 *et. seq.* "A plaintiff must establish three elements to assert a Florida Deceptive and Unfair Trade Practices Act claim: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sclar v. OsteoMed, L.P.*, 17-23247-CIV, 2018 WL 559137, at *3 (S.D. Fla. Jan. 24, 2018) (J. Moreno) (citations omitted). "While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer." *Stewart Agency, Inc. v. Arrigo Enterprises, Inc.,* 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (citation omitted). "Deception" is "defined as a representation, omission, or practice that is likely to mislead the *consumer* acting reasonably in the circumstances, to the *consumer's detriment.*" *Id. citing PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003) (emphasis added) (citations omitted) (internal quotation marks omitted).

Defendants' Motion argues that they are entitled to judgment as a matter of law because (1) Count V fails to differentiate among the respective defendants, (2) any alleged deception based on reliance on statements by Defendants was unreasonable in light of the express language of the LOI, and (3) Count V fails to allege a cognizable injury to a consumer.  ECF No. 35 at 19-22.

The respective Statements of Material Facts address the "consumer" issue. Defendants state:

> The actions described in the Complaint were business or commercial dealings between business or commercial entities and did not involve any individual consumers. (*See generally* Compl., ECF. No. 1, ¶¶ 7-15, 19-38, pp. 2-7.)

DSOF ¶14.  This purported fact is not supported by competent record evidence because Defendants' Answer denied the relevant allegations in the Complaint.  ECF No. 25.[14]  Metro's Additional Facts state:

> By holding themselves out (in the past or presently) as Metro in the marketplace, Defendants have misled or injured consumers, and thus injured Metro's reputation in the marketplace.

PAF ¶31.  Metro supports this fact by citing to paragraph 17 of Angela Pritchard's Affidavit and "exhibits thereto."  PAF ¶31.  In response, Defendants assert that this fact is disputed by Tomar Porat's affidavit, which states in relevant part "[A]t no time did we ever represent to anyone, including the public, that we were Metro." ECF No. 56 at 2, citing ECF No. 56-1 ¶11.

Paragraph 17 of the Pritchard Affidavit states, "As a result of the above, Defendants have and continue to injure Metro's reputation in the marketplace.  By holding themselves out (in the past or presently) as Metro in the marketplace, Defendants have misled or injured consumers."  ECF No. 46-1 ¶17.  The Affidavit cites to a June 3, 2020 letter from Limo Land's lawyer demanding payment from Metro and the response from Metro.  *Id.*  Exhibits B and C.  Neither of the cited

---

[14] Specifically, Paragraph 7 of the Answer admits the nature of the Plaintiff's claims but denies entitlement to relief.  Paragraphs 8 and 9 state that Defendants "lack sufficient knowledge or information to form a belief as to the truthfulness of the allegations," which has the effect of a denial. Fed. R. Civ. P. 8(b)(5).  Paragraphs 10-14 are denied.  Paragraph 15 admits the nature of the relief sought but denies that relief is warranted.

exhibits supports a conclusion that Defendants held themselves out to consumers as Metro.  This kind of "mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Hansen v. Perry Techs.*, 206 F. Supp. 2d 1223, 1225 (S.D. Fla. 2002) (J. Middlebrooks) citing *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990).   Even viewing the evidence in the light most favorable to Metro, no reasonable jury could find that consumers were deceived to their detriment.  Summary judgment should be entered for all Defendants on Count V.

## RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 35) should be **GRANTED IN PART and DENIED IN PART**.

1. Judgment should be entered on Counts II and IV in favor of Joseph Porat and Tomar Porat in their individual capacities.

2. Judgment should be entered on Counts I-V in favor of ZYP Technologies, LLC, and ZYP Financial, LLC.

3. Judgment should be entered on Counts IV and V in favor of ZYP, LLC.

4. Counts I-III should proceed to trial against ZYP, LLC.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of

being served with a copy of this Report and Recommendation.  Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 22nd day of January, 2021, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE