UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:19-CV-81502-RLR

METRO WORLDWIDE, LLC,

    Plaintiff,

v.

ZYP LLC, a Delaware limited liability company,
ZYP TECHNOLOGIES, LLC, a Florida limited
liability company, ZYP FINANCIAL GROUP,
LLC, a Florida limited liability company,
JOSEPH PORAT, Individually, and TOMAR
PORAT, Individually,

    Defendants.
_____/

## ORDER ON REPORT AND RECOMMENDATION

This matter is before the Court upon the Report and Recommendation on Defendants' Motion for Summary Judgment. DE 88. This matter was referred to Magistrate Judge Bruce E. Reinhart for a Report and Recommendation. DE 74. The Magistrate Judge issued the Report and Recommendation on January 22, 2021. The Court has conducted a *de novo* review of the Report and Recommendation, the parties' objections thereto [DE 89, 90], the parties' responses to the objections [DE 91, 92], and the record, and is otherwise fully advised in the premises.

Upon review, the Court adopts the Report and Recommendation in part, declines to adopt in part, and reserves judgment in part. The Court disagrees with the Report and Recommendation as to Count I, reserves judgment as to Counts II and III, and agrees as to Counts IV and V. Below, the Court addresses Counts I-III and V, to which one or more parties objected. The parties did not object to Count IV.

    **I.    Count I: Breach of Contract**

Plaintiff alleges Count I against ZYP, LLC, ZYP Technologies, LLC, and ZYP Financial

Group, LLC (collectively, the "Corporate Defendants"). The Magistrate Judge recommends that Count I proceed against only ZYP, LLC.

The Magistrate Judge found that, when viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that an oral contract existed that provided for essential terms on price, the items being purchased from Plaintiff, the timeframe for performance, and the purchaser's identity. DE 88 at 18-19. In reaching that conclusion, the Magistrate Judge noted the parties' course of conduct, including (i) multiple extensions of the escrow agreement, (ii) assurances that the Asset Purchase Agreement ("APA") would be signed, and (iii) the physical transfer of assets to the Limo Land facility in Springfield, Missouri. *Id.* at 18. The Magistrate Judge considered the purchaser's identity to be a close question, but ultimately concluded that a reasonable jury could find that ZYP, LLC was the purchaser, given the specific references to that entity in the parties' Business Transition Schedule. *Id*. at 19.

Defendants object and contend that no oral contract existed, and that the Report and Recommendation focused too heavily on *what* the essential terms were—based on the parties' draft APA—while overlooking whether the parties *assented* to the essential terms. DE 89 at 4. Defendants argue that the Magistrate Judge erroneously found that the assets being purchased were "all of the assets of Metro," since the draft APA had not yet incorporated schedules identifying specifically what assets were to be purchased. *Id.* at 5. Second, the parties had not assented to a $1.2 million purchase price, as illustrated by Tomer Porat's sworn affidavit stating: "[I]t would have been ludicrous to expect us to pay $1.2 million and come to an agreement with [Plaintiff] without all of the information we had requested that we describe above." *Id.* (citing DE 56-1 ¶ 12). Third, the timeline of performance was never agreed upon, for although the parties' purported timeline contemplated payments through June 2018, by early- to mid-summer 2018, Tomer and Joseph Porat (collectively, the "Individual

2

Defendants") were still meeting with Joseph Pritchard (an employee of Plaintiff) regarding Plaintiff's failure to provide due diligence to Defendants. *Id.* at 5-6. Finally, pursuant to the parties' Letter of Intent ("LOI"), the parties expressly disclaimed any intent to be legally bound by contract until they subsequently signed a formal written agreement. *Id.* at 6-7.

Plaintiff responds that, consistent with the Magistrate Judge's findings, a reasonable jury could find that an oral contract existed. DE 91 at 3. Plaintiff asserts: "Defendants not only transferred parts from [Plaintiff's] previous production facility to Defendants' production facility in Springfield, but Defendants actually manufactured 17 buses during the time they controlled [Plaintiff] and in furtherance of consummating the proposed buy/sell transaction deal." *Id.* Plaintiff also argues that the Magistrate Judge already rejected many of Defendants' objections in the Report and Recommendation, including that the APA was unexecuted and the LOI was non-binding. *Id.* at 4.

To succeed on a breach of contract claim, a plaintiff must prove "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Whether a contract exists is a question of law for the court. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). "To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to a certain and definite proposition and left no essential terms open." *W.R. Townsend Contracting, Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 300 (Fla. Dist. Ct. App. 1999) (quotation marks omitted).

The Court declines to adopt the Report and Recommendation as to Count I. The parties' signed LOI is clear that it does not create binding legal obligations, and further, that "[s]uch obligations will only be created when the purchase and other definitive agreements are signed." DE 1-1 ¶ 18. The LOI also states: "The Seller [Plaintiff] understands that this letter of intent is solely an indication of interest

3

and does not in any way constitute an offer or commitment on the Buyer's part of any kind." *Id.* ¶ 16. The parties do not dispute that the APA was unexecuted.

Because the parties expressly disavowed an intent to be legally bound until signing a definitive agreement, and because the parties never signed a definitive agreement, the Court does not infer an oral contract. *Cf. Doll v. Grand Union Co.*, 925 F.2d 1363, 1369 (11th Cir. 1991) ("When [] indications of intent are absent or are explicitly disavowed, however, the justification for enforcing the proposed lease is wholly absent."); *see Lafarge North Am., Inc. v. Matraco Colo., Inc.*, No. 07-80112-CIV, 2008 WL 2277503, at *5 (S.D. Fla. May 30, 2008) (no oral agreement inferred given "parties' clear and unambiguous expression of their intent not to be bound in the absence of a written formal agreement"); *see also Club Eden Roc, Inc. v. Tripmasters, Inc.*, 471 So. 2d 1322, 1324 (Fla. Dist. Ct. App. 1985) ("Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time."). Whether Defendants assured Plaintiff that they would execute the APA does not command a different conclusion. *See Doll*, 925 F.2d at 1367-69 (promises by defendant that it had every intention to finalize a lease once it was drafted, approved and signed by both parties was conditional and did not make letter of intent a binding contract). Nor do the parties' actions after signing the LOI, including the transfer of Plaintiff's assets, persuade the Court otherwise. *See id.* at 1363-69 (actions taken in reliance on letter of intent, plus oral expressions of intent to complete a transaction, did not create binding obligations where the parties expressed clear intent not to be bound absent a formal written document); *see also White Constr. Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1321 (M.D. Fla. 2009) (plaintiffs' claims of partial performance did not create a binding contract, given the express terms of the parties' letter of intent that the parties did not intend to be bound until after due diligence was completed and a definitive contract executed).

4

In concluding that a reasonable jury could find that an oral contract existed, the Magistrate Judge noted that the parties' conduct after signing the LOI supported the conclusion. Based on the foregoing case law, however, that conduct does not overcome the parties' express intentions not to be bound until signing definitive agreements, coupled with their failure to sign such agreements. As such, the Court does not find that a reasonable jury could find that an oral agreement existed; summary judgment is therefore granted for each of the Corporate Defendants as to Count I.

## II.     Counts II and III: *Quantum Meruit* and Promissory Estoppel

Plaintiff alleges Count II against all Defendants and Count III against the Corporate Defendants. As to Count II, the Magistrate Judge recommends that summary judgment be granted for the Individual Defendants, ZYP Technologies, and ZYP Financial, but denied for ZYP, LLC. As to Count III, the Magistrate Judge recommends that summary judgment be granted for ZYP Technologies and ZYP Financial, but denied for ZYP, LLC.

The Court reserves judgment as to Counts II and III. At multiple points in Plaintiff's summary judgment briefing, statements of fact, and supporting affidavits, Plaintiff lumps together and conflates the Defendants and non-party Limo Land Inc., in turn creating inconsistencies that cause confusion. This appears to be the result of Plaintiff's legal position that "ZYP and Limo Land are one in the same." DE 81 at 14. However, the Magistrate Judge found that the Corporate Defendants and Limo Land are all separate entities, and that Plaintiff's evidence did not "support a finding that the corporate form of these entities should be disregarded or that the actions of one should be imputed to any of the others." DE 88 at 23-24. The Court agrees with the Magistrate Judge and adopts that finding. Given that finding, Plaintiff's summary judgment materials preclude the Court from undertaking a proper analysis.

Plaintiff's supplemental summary judgment materials at docket entries 81 and 82, which

5

Plaintiff filed after taking depositions and other discovery that it deemed important to developing its case, illustrate the inconsistencies that confuse the Court. For example, Plaintiff's brief at docket entry 81 states: "The additional discovery and depositions since [Defendants] filed their Motion proves that their attempt is futile because Limo Land was at all times controlled and directed by the Porats." DE 81 at 2 (footnote omitted). Yet just two pages later, Plaintiff states: "ZYP (and only ZYP) chose Limo Land, Inc. as their manufacturing partner and facility, **which is an entity they own and are stakeholders**." *Id.* at 4 (emphasis added).[1] Just three pages later, Plaintiff adds further confusion by stating: "**Defendants** chose a manufacturing location and manufacturing partner – **an entity that they owned in Springfield, Missouri** – to begin manufacturing Metro buses." *Id.* at 7 (emphasis added).[2] Six pages thereafter, Plaintiff returns to its original position and states: "Individual Defendants Joseph Porat and Tomer Porat are 50% owners in Limo Land, Inc." *Id.* at 13. Yet, eight pages later, Plaintiff states: "ZYP directly benefit[s] from Limo Land's profits." *Id.* at 21.

Plaintiff's statement of facts at docket entry 82 is similarly problematic. At paragraph 25, Plaintiff states: "ZYP began manufacturing buses at **its** Limo Land facility in Springfield, Missouri." DE 82 ¶ 25 (emphasis added). But one paragraph later, Plaintiff states: "Limo Land d/b/a Springfield Coach Group is owned and operated by Gary Spaniak, Individual Defendant Tomer Porat, and Individual Defendant Joseph Porat." *Id.* ¶ 26. Three paragraphs later, Plaintiff states: "Through its manufacturing of buses at **its** Limo Land facility, ZYP has gained profits as a result of Metro's efforts." *Id.* ¶ 29 (emphasis added). These same inconsistencies appear in Plaintiff's original summary judgment materials submitted last August. *Compare* DE 46-1 ¶ 11 and DE 47 ¶ 25 ("ZYP began

---

[1] Here and at other points in its summary judgment materials, Plaintiff fails to specify which ZYP entity it was referring to. The Magistrate Judge also noted Plaintiff's general references to "ZYP" and its failure to define which specific entity it was referring to. DE 88 at 10 n.3.
[2] Plaintiff did not specify which Defendant(s) it was referring to.

6

manufacturing buses at its Limo Land facility in Springfield, Missouri . . . . ZYP has gained significant profits as a result of Metro's efforts"), *with* DE 46-1 ¶ 12 and DE 47 ¶ 26 ("Limo Land is owned and operated by Individual Defendant Tomer Porat and/or Individual Defendant Joseph Porat").

The foregoing examples illustrate the inconsistencies in Plaintiff's position. At times, Plaintiff represents that the Individual Defendants are the owners of Limo Land. At other times, Plaintiff indicates "ZYP" is the stakeholder of Limo Land, without indicating which specific ZYP entity it means to reference. And still at other times, Plaintiff states that the "Defendants" own Limo Land—a term that could encompass any and/or all of the Individual Defendants and Corporate Defendants. In turn, the Court is left to guess what Plaintiff's true position is.

Given the Court's finding that the Corporate Defendants and Limo Land are separate entities, Plaintiff's summary judgment materials, as drafted, hinder the Court's ability to evaluate the record. This is in part because Plaintiff's *legal* position—that "ZYP and Limo Land are one in the same"—is embedded within the *factual* record: the statements of fact and the affidavits that Plaintiff prepared to support the statements of fact. Because the factual record has an embedded legal position that the Court herein rejects, the Court cannot properly evaluate Counts II and III.

Before the Court can issue an order as to Counts II and III, Plaintiff shall submit renewed summary judgment materials, including its brief, statement of fact, and supporting affidavits, that no longer conflate the Defendants and Limo Land. Plaintiff's renewed summary judgment materials shall not be used to supplement the record evidence; nor will the Court consider such. Rather, Plaintiff must clarify its existing arguments in light of the Court's finding that the Corporate Defendants and Limo Land are separate legal entities; cease conflating the various legal entities; and resolve inconsistencies throughout its brief, statement of fact, and affidavits. When referencing one or more of the Defendants, Plaintiff shall identify precisely which Individual Defendant or Corporate Defendant it is referencing,

rather than providing general references to "ZYP" or "Defendants." Failure to follow this directive may result in the Court disregarding the non-compliant portions of Plaintiff's renewed summary judgment materials.

Defendants shall have the option, but not the obligation, to file a renewed summary judgment motion on Counts II and III, in light of the Court's ruling. Should Defendants opt to renew their motion, they, too, are precluded from supplementing the record evidence, and may only clarify existing arguments in light of the Court's Order.

The Court therefore orders that, by March 21, 2021, Defendants shall file notice with the Court indicating whether, in light of the Court's Order, they wish to file a renewed motion for summary judgment as to Counts II and III. If Defendants wish to file a renewed motion, that motion shall comply with the Court's guidance herein and be due 14 days from the date on which notice is filed. Local Rule 7.1(c) shall govern the deadlines for Plaintiff's response and Defendants' reply. If Defendants do not wish to file an updated motion, then within 14 days from the date on which Defendants file notice thereof, Plaintiff shall submit a renewed response to Defendant's original motion for summary judgment at docket entry 35, consistent with the Court's guidance herein. Defendants' reply shall be due within seven (7) days after Plaintiff files its updated response.

**III.   Count V: Unfair Trade Practices**

Plaintiff alleges Count V against the Corporate Defendants. The Magistrate Judge recommends that summary judgment be entered as to all Corporate Defendants.

Plaintiff objects and argues that it is undisputed that ZYP sold buses to "consumers," and that manufacturing issues with those buses impacted consumers who contracted to purchase "Metro quality buses." DE 90 at 3-4. Plaintiff insists that, contrary to the Magistrate Judge's findings, the Corporate Defendants held themselves out to consumers as Plaintiff. *Id.* Plaintiff cites its Supplemental Response

at docket entry 81, which includes an affidavit from Scott Loges, a former employee of Plaintiff, who stated that 21 orders were canceled when ZYP ran the day-to-day operations of Plaintiff, and that Plaintiff lost several multi-year customer contracts. *Id.* at 4. Plaintiff also points to the affidavit of Angela Pritchard, who stated that ZYP, LLC retained profits from sales of Plaintiff's buses. *Id.* at 5. Plaintiff asks the Court to reject the Report and Recommendation to the extent that it grants summary judgment to ZYP, LLC as to Count V.

The Corporate Defendants refute Plaintiff's objection for three reasons. First, no Corporate Defendant held itself out to any consumer as Plaintiff. DE 92 at 2. Second, Limo Land is a separate and distinct entity from the Corporate Defendants, and the record proves that the Spaniak Family owns and controls Limo Land (not the Corporate Defendants). *Id.* Third, Plaintiff did not offer evidence demonstrating that consumers believed they were purchasing "Metro quality buses." *Id.*

To assert a claim under Florida's Deceptive and Unfair Trade Practices Act, a plaintiff must establish three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sclar v. OsteoMed, L.P.*, No. 17-23247-CIV, 2018 WL 559137, at *3 (S.D. Fla. Jan. 24, 2018). An "unfair practice" is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or *substantially injurious to consumers*." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (citation omitted). "Deception" means "a representation, omission, or practice that is likely to mislead the *consumer* acting reasonably in the circumstances, to the *consumer's detriment*." *Id.* (citation omitted).

The Court adopts the Report and Recommendation as to Count V. Scott Loges's affidavit states that 21 orders were canceled during the time that ZYP ran Plaintiff's day-to-day operations, and that Plaintiff suffered lost profits through canceled orders. Angela Pritchard's affidavit states that ZYP, LLC retained profits from sales of Plaintiff's buses. Neither affidavit supports the conclusion that the

Corporate Defendants held themselves out to consumers as Plaintiff. Moreover, Plaintiff fails to provide record evidence supporting its argument that consumers thought they were purchasing "Metro quality buses." That there were build quality or manufacturing issues with some buses does not prove Plaintiff's argument. The Court thus agrees with the Magistrate Judge that no reasonable jury could find that consumers were deceived to their detriment, in violation of Florida's Deceptive and Unfair Trade Practices Act.

**ORDERED AND ADJUDGED**:

1. The Court **ADOPTS IN PART, DECLINES TO ADOPT IN PART, AND RESERVES JUDGMENT IN PART** as to the Report and Recommendation [DE 88].
2. Summary judgment is granted on Counts I, IV, and V as to ZYP, LLC, ZYP Technologies, LLC, and ZYP Financial Group, LLC.
3. Summary judgment is granted on Count IV as to Joseph Porat, Tomer Porat, ZYP, LLC, ZYP Technologies, LLC, and ZYP Financial Group, LLC.
4. The parties shall submit renewed summary judgment materials as to Counts II and III (and Defendants shall file notice regarding their intent to submit a renewed summary judgment motion for those Counts), consistent with the Court's directives set forth in Section II.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 16th day of March, 2021.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record